## SUGARLAND INDUSTRIES v. CUELLAR.
### (No. 8392.)

(Court of Civil Appeals of Texas. Galveston. June 14, 1923.)

1. **Venue ⏗21—Right to be sued in county of residence not to be denied on strained or doubtful construction.**

A defendant is not to be denied the privilege of being sued in the county within which he resides on strained or doubtful construction.

2. **Venue ⏗7—Defendant held not to have agreed in writing to perform contract in particular county.**

Where a contemplated purchaser of sugar, on receipt of contract in duplicate, one of which should have been signed and returned to the seller, failed to so sign and return, and also failed to notify of his rejection of the contract, and where he claimed no benefit under it, *held*, that he had not become bound by the writing, so as to bring him within Vernon's Sayles' Ann. Civ. St. 1914, art. 1830, § 5, relating to venue, in cases where defendant has agreed in writing to perform the contract sued on, in a particular county.

Appeal from District Court, Ft. Bend County.

Action by I. H. Kemper and others, as trustees under a declaration of trust known as the Sugarland Industries, against C. Cuellar, doing business under the name of the Cuellar Wholesale Company. From a judgment granting a change of venue, plaintiffs appeal. Affirmed.

A. M. Waugh, of Houston, and Peareson & Peareson, of Richmond, for appellants.

Perkins & Floyd, of Alice, for appellee.

<hr/>

⏗For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

LANE, J. This suit was instituted in the district court of Ft. Bend county, Tex., by I. H. Kempner and others, as trustees under a declaration of trust known as the Sugarland Industries, against C. Cuellar, who is engaged in business under the name of Cuellar Wholesale Company, and whose place of residence and business is at San Diego, Duval county, Tex. The parties will hereinafter be referred to as the Sugarland Industries, or appellants, and C. Cuellar, or appellee.

Appellee, C. Cuellar, filed his plea of privilege to be sued in the county of his residence; said plea being in manner and form as required by law. The appellant, the Sugarland Industries, filed a contest of appellee's plea of privilege, and for grounds of contest alleged that appellee had, within the meaning of the statutes, agreed in writing to perform the contract sued upon in Ft. Bend county, Tex. Upon a hearing before the court without a jury, appellee's plea of privilege was sustained, and an order entered changing the venue of the cause to Duval county, Tex. The Sugarland Industries has appealed.

The only question submitted for our decision is: Did the appellee, within the meaning of section 5 of article 1830, Vernon's Sayles' Civil Statutes 1914, agree in writing to perform the contract sued upon in Ft. Bend county? It was shown that on the 21st day of March, 1921, appellee called F. M. Lewis & Co., brokers of San Antonio, Tex., over the telephone, and asked them for a price on sugar. Lewis & Co., acting as brokers for the Sugarland Industries, quoted appellee a price of 8¼ cents per pound, less 2 per cent. for cash, plus the New Orleans delivery rate to San Diego, Tex., shipment to be made at buyer's option up to May 15, 1921. The price and terms made by Lewis & Co., over the telephone to Cuellar are stated by F. M. Lewis, the spokesman, as follows:

"I quoted the price and terms as follows: Standard fine granulated sugar at 8¼ cents per pound less 2 per cent. cash within seven days after arrival of car at destination, plus the New Orleans delivery rate to San Diego; shipment to be had at buyer's option up to the 15th of May."

C. Cuellar accepted the price and terms so given him over the telephone, and directed Lewis & Co. to book him for one car of sugar upon such price and terms. Upon such acceptance, F. M. Lewis told Cuellar that a written contract would be sent to him direct from the Imperial Sugar Company (Sugarland Industries). The conversation above mentioned having been closed, Lewis & Co. wrote the Imperial Sugar Company (Sugarland Industries) as follows:

"March 21, 1921.
"Imperial—Sugarland, Texas—Gentlemen: Please enter for Cuellar Wholesale Com. Co., San Diego, Texas, 360 bags Gran, 8¼. Shipment up to May 15.
"Yours truly, F. M. Lewis & Co."

Upon receipt of the letter above quoted, the appellant on the 22d day of March, 1921, mailed to appellee Cuellar the following instrument:

"Imperial Sugar Company is the name under which the Sugarland Industries conducts its sugar department. It is an association of trustees acting under that certain declaration of trust dated January 1, 1910, which is made a part hereof for all purposes.

"Imperial Sugar Company, Sugarland, Texas.

"Sugarland, Texas, 3/22/21.
"Broker IRCO/FML

"Confirming sale as manufacturers to Cuellar Who. Com. Co., San Diego, Texas. 360 bags; ——— bbls. Shipment as wanted. Price: Basis 8.25 May 15th.

"Terms: Net 30 days from date of invoice, or 2 per cent. discount seven (7) days from arrival of car at point of destination named in bill of lading. Positively no discount will be allowed if remittance is mailed later than seven days after arrival at such destination. Buyer must furnish shipping instructions for all sugar covered by this contract, for shipment within the time specified herein. Failure on the part of buyer to so furnish shipping instructions and specifications shall give the seller the right to make arbitrary shipments of the amounts due the buyer, or to declare the contract canceled so far as any amount then due the buyer is concerned, at seller's option, after the expiration of said specified time.

"This contract is not subject to countermand. Seller not liable for nondelivery if caused by strikes, fires, destruction of refinery, the act of God, or any contingency or calamity beyond seller's control, including failure or delays in arrival of raw sugars caused by force majeure.

"All invoices for sugar covered by this contract are payable at Sugar Land, Texas, in New York, St. Louis, Kansas City, Galveston, Houston, or Dallas exchange. Local checks will not be accepted.

"Sellers reserve the right to ship bill of lading attached.

"No guarantee. Prices shown above are not subject to market changes.

"Subject refinery delay.
"Imperial Sugar Company,
"Sales agent's copy. By H. H. Herder.

"Any increase in duty imposed by the government of the United States on sugar covered by this contract shall be added to the price set forth in this contract.
"Imperial Sugar Company."

It was shown that the copy sent to the buyer contained near the bottom substantially the following:

"Buyer's copy.
"Above order is hereby accepted.
" ———, Buyer's Signature."

Appellee received the copy of the instrument so mailed to him, on the 24th day of March, 1921, and refused to sign it, but did not make his objections thereto known to appellants or their agent, F. M. Lewis & Co., until on the 15th day of April, 1921, at which time appellee called F. M. Lewis over the

telephone at San Antonio and asked for prices on sugar. In reply to this inquiry, Lewis told appellee he had a car coming, and appellee in reply told Lewis that he did not sign the instrument sent to him by appellants. After F. M. Lewis had the conversation with appellee, in which appellee informed him that he would not sign the instrument sent to him by appellants, he decided that he would not send appellee a confirmation of the order which he had booked for him and on the 2d day of May, 1920, Lewis wrote appellants stating that Cuellar had refused to sign the instrument sent him by appellants and that he (Cuellar) did not consider himself bound by said instrument. On receipt of this letter appellants wrote Lewis & Co. on May 3, 1921, that they had received the order of Cuellar for a car of sugar sent in by them March 1, 1921. Cuellar had from March 21 to May 1 before giving any indication of dissatisfaction with the contract sent to him, and that they intended to tender the sugar sold to Cuellar, and that if he refused the shipment they would sell the same for his account and sue him for the difference between the contract price and the market price at the time it was sold for Cuellar's account, and that they were mailing to Cuellar a copy of said letter.

On May 6, 1921, Cuellar wrote appellants as follows:

"San Diego, Tex., May 6, 1921.

"Imperial Sugar Company, Sugarland, Texas —Gentlemen: We are in receipt of a copy of your letter, addressed to F. M. Lewis & Co., and beg to say in reply that we booked the March order to be ship on May 15th, under the best faith; but this was to protect on the price if the sugar was lower by the time of shipment, and also was subject to the terms and conditions of your contract which after carefully read, we don't thought right to sign same as the market was so uncertain that there was to long time for the order to be ship, and rather hold our buying option until further time. We fully understand the rules of the contract, but when there are conditions and terms not suited by us then we don't sign same, but that don't mean in the commercial law, nothing but kind of business convience if you was in the same position like we are you will act just the same way.

"Now, gentlemen, if conditions, and terms of contract are not agreeable with the circumstances of your commercial business then you are not obligated to sign same, if this is the reason by not selling us with the same liberal terms, and conditions like you sell the other jobbers, then you may do what you please, you are well represented in this vicinity by having us as distributors of your sugar, and been pushing the sale of same to the extend of our best ability under this hard times, but if you are not well pleased and will not consider us your most faithfully servants in your line so as to justify your concern to sell us under the liberal terms like other jobbers, will appreciate you to let us know so we can get our sugar from some other mills, we are willing to accept the car to be ship at the end of this month, under the regular present consignment terms. Thanking you very much in advance for your prompt attention.

"We are corcially yours,
"Cuellar Wholesale Commission Co."

C. B. Gillespie, who was, at the time of these transactions, sales manager for appellants, testified as follows:

"Now, up to this time my understanding is that with customers we haven't had any trouble with shipments; shipments would go right along. Up to this time we hadn't any trouble with Mr. Cuellar; that is, I hadn't heard of any. While these contracts were handled either direct by the Imperial Sugar Company to the customer or by the Imperial Sugar Company to the broker, in some territories, the broker sends us his own—has his own written forms, you know; then our contract is mailed to him and it is his job to get the customer to sign the contract, and we then check back occasionally over the list—it depends on the condition of the sugar market, I presume, and write to the broker that such a man had not signed the contract. They don't seem to have done that in this case."

Testifying further this witness said that appellants always sent two copies of the sales contract to the buyer, one is supposed to be signed by the buyer and returned to the seller. It was shown that on two former sales by appellants to appellee, contracts the same as the one sent in the present case were sent to appellee and were signed and returned to appellants.

F. M. Lewis, of Lewis & Co., testified that it was the general custom to send two copies of the contract of sale to the purchaser, one of which was to be signed by the buyer and returned to the seller; that, when he took an order from the buyer for the seller, he would take such order at San Antonio and forward it to the seller, and then in turn the seller would send him two copies of the contract, and that he would send them to the buyer to be signed by him, one of which is to be kept by the buyer and the other returned to the seller.

H. H. Herder, assistant traffic manager for appellant, testified relative to the forms of the contracts sent to Cuellar and the expectation that Cuellar would sign one and return it to appellants practically as did C. B. Gillespie.

Appellee, Cuellar, testified that the contract sent to him by appellant for his signature was not in accordance with the terms given him by F. M. Lewis & Co. in their telephone communication, and therefore he refused to sign said contract; that his reason for not notifying appellants or their brokers, Lewis & Co., upon receipt of same, that he would not sign the contract, was that there was a custom with some brokers that, if the buyer did not sign and return the contract sent by the seller within a certain time, the proposed

sale was considered off. It was not shown that Cuellar had any knowledge of the custom of sellers of sugar, pleaded by appellants and testified to by one or more of their witnesses.

It is contended by appellants that appellee had, within the meaning of section 5 of article 1830, Vernon's Sayles' Civil Statutes 1914, contracted in writing to perform the contract sued upon in Ft. Bend county, Tex., in that it was the duty of appellee, in the event said contract was not satisfactory to him, to reject the same and to notify appellants within a reasonable time after its receipt of such rejection, and that as appellee had failed to notify appellants of his rejection of said contract he became bound by all the provisions thereof.

While we agree with appellants that it is not necessary for a party in all cases to actually sign a written contract in order for him to become bound thereby, the exceptions, however, are where the party sought to be bound has accepted and acted upon the contract, or where, as in the case of Gottlieb v. Dismukes (Tex. Civ. App.) 230 S. W. 792, it is stipulated in the contract sent and received that the terms set forth therein are parts of the same, and that its receipt without objection or notification to the sender of errors therein is to be taken as an acceptance of the terms and provisions thereof.

[1] We cannot, however, agree with appellants' contention that the contract in the present case comes within either of the exceptions mentioned, or that appellee's failure to promptly notify appellants of his refusal to agree to the terms and provisions of said contract would bind him to a performance of same in Ft. Bend county, Tex. He was not notified by any stipulation in the contract or otherwise, so far as shown that his failure to reject the contract and to promptly notify appellants of such objection, if any, would constitute an acceptance of the contract by him, nor has it been shown that he did any act indicating an acceptance of the same.

"The defendant is not to be denied the privilege of being sued where he resides upon strained or doubtful construction of the exceptional provision." Lasater v. Waits, 95 Tex. 555, 68 S. W. 500; Clarke v. Taylor (Tex. Civ. App.) 223 S. W. 879.

[2] We are not in disagreement with the contention of appellants that, if appellee entered into a verbal contract of purchase of the sugar in question from appellants, through Lewis & Co., brokers, such contract of purchase would be binding upon appellee, and that, if appellants have suffered loss by a breach of the contract on the part of appellee, they may, in the proper court, recover such loss from appellee. But the question of appellee's liability to appellants for a breach of contract is not now before us for our consideration. As hereinbefore stated, the only question presented on this appeal is: Did the court err in holding that appellee did not promise in writing to perform the contract sued upon in Ft. Bend county, so as to confer venue in that county under the provisions of section 5 of article 1830, Vernon's Sayles' Civil Statutes 1914? We do not think the court erred in so holding.

Having reached the conclusion above expressed, the judgment is affirmed.

Affirmed.