(140 App. Div. 442.)

WESTER et al. v. CASEIN CO. OF AMERICA.

(Supreme Court, Appellate Division, First Department. November 4, 1910.)

1. CONTRACTS (§ 26*)—OFFER—ACCEPTANCE.
      Where an offer is submitted by correspondence, and an acceptance is placed in the mail, the contract is completed.
      [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 119, 120; Dec. Dig. § 26.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. CONTRACTS (§ 19*)—OFFER—WITHDRAWAL.

An effort to withdraw from or revoke an offer submitted by correspondence is not effectual, unless notice of withdrawal is received by the other party before acceptance.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 57–60; Dec. Dig. § 19.*]

3. CORPORATIONS (§ 665*)—JURISDICTION—CAUSE OF "ACTION ARISING WITHIN THE STATE."

Plaintiff, residing in South America, executed a contract there with a foreign corporation, providing for the manufacture of goods there and their inspection by an agent of the buyer, and for delivery and payment in such country. The buyer refused to accept and pay for the goods, and sent a cablegram to that effect from New York. *Held*, that the cause of action arose in the foreign country, and not in New York, within Code Civ. Proc. § 1780, authorizing an action against a foreign corporation, where the cause of action arose in the state.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2600; Dec. Dig. § 665.*]

Ingraham, P. J., dissenting.

Appeal from Trial Term, New York County.

Action Juan E. Wester and others against the Casein Company of America. From a judgment for plaintiffs, and from an order denying a new trial, defendant appeals. Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and DOWLING, JJ.

Gillispie & O'Connor (Charles J. Hardy, of counsel, and George J. Gillespie, Frederick P. Whitaker, and William F. Delaney, on the brief), for appellant.

Olney & Comstock (Peter B. Olney, of counsel, and Don R. Almy and Peter B. Olney, Jr., on the brief), for respondents.

CLARKE, J. The plaintiffs are nonresidents, residing at Buenos Ayres, Argentina. The defendant is a foreign corporation. The contract was executed in Buenos Ayres April 30, 1904, and was to be there performed. The parties immediately entered upon performance, and during the following seven months large quantities of casein were delivered by plaintiffs and inspected and paid for by defendant at Buenos Ayres. It is conceded that the courts of this state have no jurisdiction, unless the case can be brought within subdivision 3 of section 1780 of the Code of Civil Procedure, which is as follows:

"Sec. 1780. * * * An action against a foreign corporation may be maintained by another foreign corporation or by a nonresident in one of the following cases only: * * * (3) Where the cause of action arose within the state. * * *"

The cause of action was the breach of contract. The question is: Where did that breach occur? The learned court charged the jury as follows:

"The contract provided that the goods should be inspected by the agents of the defendant in Buenos Ayres, and then sent on, and should be paid for in Buenos Ayres. This defendant sent a cablegram on or about the 3d of December, 1904, in which defendant said that it would not go on with the con-

tract unless the goods were inspected and paid for in New York. That, of course, was not the provision of the contract. The plaintiffs then immediately cabled to the defendant, and said they would sue for breach of contract, and would sell the goods for account of whom it might concern. Therefore, as far as the issues in this case are concerned, that contract between the plaintiffs and the defendant was broken by the defendant on the 3d of December, 1904. The only question for you to determine, then, is: What damage was suffered by plaintiffs by reason of this breach of the contract by defendant on December 3, 1904?"

. To this there was no objection or exception, and no request to charge. Upon the motion to dismiss upon the ground of want of jurisdiction, and to set aside the verdict, which was reserved, the court in its opinion said:

"On November 28, 1904, the plaintiff cabled from Buenos Ayres to the defendants at New York: 'Credit demanded is for two hundred and twenty-five tons of own. Answer immediately by Western Union Telegraph Company, and telegraph credit.' The defendants answered the next day by cablegram from New York: 'Must insist upon inspection and payment destination.' This last cablegram constituted the breach of contract, and I think the breach took place when and where the cablegram was delivered to the cable company for transmission."

Both sides quote from Hibernia National Bank v. Lacombe, 84 N. Y. 367, 38 Am. Rep. 518, where the Court of Appeals cited with approval the language used in Durham v. Spence, L. R. 6 Ex. Cas. 46:

"The cause of action must have reference to such time as well as such place. Does, then, the consideration of time when the cause of action arises give us any assistance in determining the place where it arises? I think it does. The cause of action arises when that is not done which ought to have been done, or that is done which ought not to have been done; but the time when the cause of action arises determines also the place where it arises, for, when that occurs which is the cause of action, the place where it occurs is the place where the cause of action arises."

Under the facts in this case, the plaintiffs had 225 tons of casein at Buenos Ayres, which, under the contract, it was the duty of the defendant to there inspect and pay for. They did not inspect and pay for these goods at that time and place, and hence there was a breach of the contract. It was such a breach as authorized the plaintiffs to rescind the whole contract and sue for damages, to wit, the value of the contract to them; and this they did. The breach was the refusal to pay, and this occurred at Buenos Ayres. The cablegram was evidence of such breach.

The appellant claims that the rule of law applicable to negotiations for a contract entered into by correspondence is to be applied. It is familiar law that when an offer is submitted by correspondence, and an acceptance is placed in the mail, the minds of the parties have met, and the contract is completed. But it is also true that an effort to withdraw from or revoke the offer is not effectual until its receipt by the other party before acceptance. In Patrick v. Bowman, 149 U. S. 411, 13 Sup. Ct. 811, 866, 37 L. Ed. 790, it is said:

"The authorities are abundant to the proposition that, when an offer is made and accepted by the posting of a letter of acceptance before notice of withdrawal is received, the contract is not impaired by the fact that a revocation had been mailed before the letter of acceptance. * * * It cannot be

withdrawn, unless the withdrawal reaches the party to whom it is addressed before his letter of reply announcing the acceptance has been transmitted."

So, where the termination of a contract depends upon notice, it has been held that it is the receipt of the notice, and not the mailing of it, which terminates the contract. In Crown Pt. Iron Co. v. Ætna Ins. Co., 127 N. Y. 608, 28 N. E. 653, 14 L. R. A. 147, Vann, J., said:

"It is contended by the defendants that the mailing of the policies with a letter stating the object sufficed to cancel them, because it was equivalent to the acceptance of a proposition by mail. * * * Those cases have no application here, because no negotiation was pending and no contract was proposed. * * * It was necessary for the plaintiff, in order to terminate the policies, to have its notice actually reach the companies or their representatives, and the instrument selected for that purpose was the agent for the plaintiff, not of the defendants. If the letter never reached the companies, they would not have been bound; or if it reached them after long delay, they would have been bound only from the day of the receipt."

We think that it was not the sending of the cablegram, but its receipt in Buenos Ayres, coupled with the refusal there to receive and pay for the goods, and the election by the plaintiffs to regard said acts as a breach of the entire contract, and to rescind and sue for damages, that constituted the breach. Wherever there has been an obligation to pay and a refusal, the court has held that the place of payment and the failure to there pay was the place where the cause of action arose when the action was for damages for a breach. So in the Hibernia National Bank Case, supra, where the plaintiff, a national bank, organized and having a place of business in New Orleans, purchased for value of defendant, the Mechanics' & Traders' Bank, a Louisiana corporation, a draft drawn on bankers in the city of New York, payable to plaintiff's order. The draft was duly presented to the payees at New York, and payment refused. It was duly protested, and notice given to the drawer, and the court said:

"That the cause of action in the case before us arose, where the draft by its terms was payable, when payment was refused and notice given. These things constituted a cause of action, and it has arisen within this state."

In the case at bar the contract was executed in Argentina. It was to continue for three years. It provided for the manufacture of goods in Argentina, to be there inspected by agents of the defendant in comparison with samples there deposited, for the delivery there of the goods and payment at Buenos Ayres therefor. The goods were not there inspected, accepted, or paid for. To hold that the cause of action arose anywhere else than in Buenos Ayres, upon those facts, would be a legal fiction.

The judgment and order appealed from should be reversed, and the complaint dismissed, upon the ground that the courts of the state of New York have no jurisdiction over the cause of action, with costs to the appellant.

McLAUGHLIN, LAUGHLIN, and DOWLING, JJ., concur.

INGRAHAM, P. J. (dissenting). I do not agree that the court had no jurisdiction, as I think there was a breach of the contract within

this state. It is true that the plaintiffs might have acted upon the telegram sent by the defendant to South America and treated that as a breach. Under the contract, however, the plaintiffs were entitled to ship their merchandise for the account of the defendant to England, and to draw drafts on the defendant with the bill of lading annexed. They followed this course, expressly reserved to them by the contract, shipped the merchandise to England, and drew a draft upon the defendant in New York for the contract price of the merchandise shipped. When the draft was presented to the defendant in New York, it refused to accept the merchandise shipped, although up to that time the plaintiffs had proceeded strictly under the contract. This final act of the defendant, from which resulted the breach, was performed in New York, and this, I think, gave the courts of New York jurisdiction. While the defendant is a corporation organized under the laws of the state of New Jersey, it has its principal place of business in the city of New York, and it is here that its business is transacted. While it is a New Jersey corporation in name, it transacts its business in New York and has its place of business here; and, so far as a corporation can be domiciled in a place other than that in which it is incorporated, it has a domicile in New York. By its act in refusing to pay the draft drawn for the merchandise shipped under the contract, it committed a breach of the contract, which the plaintiff accepted as a breach of the contract; and I think it unjust to turn the plaintiffs out of court upon the ground that a corporation thus domiciled and doing business within this state, and which has refused to carry out a contract here, was organized in the state of New Jersey. There is substantially no dispute but that the act of the defendant in refusing to comply with its contract was without justification, and that the defendant is liable to the plaintiffs for the damages sustained.

I have examined the objections taken by the defendant upon the trial, but I do not think they require a reversal of the judgment.

The judgment and order should therefore be affirmed.