JAMES CORCORAN ET AL., APPELLANTS, V. LEON'S, INC., ET AL., APPELLEES.

FILED FEBRUARY 16, 1934.   No. 28668.

*S. L. Winters,* for appellants.

*Leon & White, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and CLEMENTS, District Judge.

EBERLY, J.

This is an action at law by James Corcoran and wife against Leon's, Inc., (a corporation) for rent of a store-room and basement owned by plaintiffs, situated in Omaha, Nebraska, for the period commencing March 1, 1930, and terminating in May, 1931. Issues were joined by the defendant, and the trial, in which by agreement of parties a jury was expressly waived and the cause submitted to the court for determination, resulted in findings for the defendant and judgment dismissing the action. Motion for new trial was overruled, and plaintiffs appeal.

The undisputed facts are that defendant occupied the premises referred to from March 1, 1924, to February 28, 1929, under the terms of a written lease for five years, executed by the parties to this litigation. The covenants of this lease were performed, and all rent reserved was paid promptly. In the months of January and February, 1929, oral negotiations were carried on in the city of Omaha by the parties to this litigation for the purpose of securing a renewal or extension of this five-year lease, which, by its terms, expired on the last day of February of that year. All parties were residents of Omaha and the conferences were carried on by personal interviews as well as by use of the telephone. As the result of these efforts, excepting as to the amount of the monthly rental to be paid, a substantial agreement had been arrived at extending the terms of this five-year lease for the period of an additional year. On the subject of the monthly rental there was as yet no meeting of minds. Finally, on January 24, 1929, a letter in behalf of plaintiffs, duly subscribed, was transmitted by mail to defendant, from which we quote the following: "Since our conversation at your store, some ten days ago, relative to terms for renewal of lease on your Leon Store in South Omaha, which lease expires on March 1, 1929, will say that I am

obliged to notify you that I cannot make any concession to you relative to the reduction in rent. * * * Please notify me if you desire to continue to lease this building, at your earliest convenience."

By a letter dated February 1, 1929, the defendant replied to the foregoing communication. This letter of reply is, in part, as follows: "We are in receipt of your letter of Jan. 24. We believe your attitude is a most unreasonable one in view of the fact that property values have fallen and business conditions no longer justify such high rents. However, since we have already committed ourselves to purchases of merchandise for the next six months, we have decided to accept your proposition to hold over for one year at the same rental and under the terms and conditions of our present lease."

Plaintiffs deny receipt of this letter, and challenge the sufficiency of the testimony to establish this fact. However, the evidence is uncontradicted, and corroborated, that this letter of February 1 was dictated and signed by the authorized representatives of defendant; that it was placed in an envelope properly addressed, and with the necessary postage affixed thereto was on the day of its date deposited in the United States mail at Omaha, Nebraska.

The trial court expressly found that a contract was entered into, by virtue of this exchange of letters referred to above, for a lease for one year commencing March 1, 1929, and terminating February 28, 1930. This conclusion, omitting consideration of the question of the effect of the statute of frauds, the evidence amply supports.

The governing principle on this question appears to be that, where a person makes an offer and requires or authorizes the offeree, either expressly or impliedly, to send his answer by post, the acceptance is communicated and the contract is completed from the moment the acceptance is mailed. *Burton v. United States,* 202 U. S. 344; *Tayloe v. Merchants Fire Ins. Co.,* 9 How. (U. S.) 390, 399, 400; *Patrick v. Bowman,* 149 U. S. 411, 424;

*Adams v. Lindsell*, 1 B. & Ald. (Eng.) 681; *Henthorn v. Fraser* (1892) 2 Ch. (Eng.) 27; *Wester v. Casein Co.*, 125 N. Y. Supp. 335; *Bluthenthal v. Atkinson*, 93 Ark. 252; *Campbell v. Beard*, 57 W. Va. 501.

"The request or authorization to communicate the acceptance by mail is implied * * * where a person makes an offer to another by mail and says nothing as to how the answer shall be sent." 13 C. J. 300.

"Since agreements made by means of the post * * * are simply an illustration of the general rule before stated that the offerer takes the risk as to the effectiveness of communication if the acceptance is made in the manner either expressly or impliedly indicated by him, it necessarily follows that the contract is complete as soon as the letter containing the acceptance is mailed, * * * and it makes no difference whatever that, through mistake of the post office authorities * * * or through accident in transmission, it is delayed or is lost in transit and never received by the offerer." 13 C. J. 301.

In short, "An acceptance may be transmitted by any means which the offerer has authorized the offeree to use and, if so transmitted, is operative and completes the contract as soon as put out of the offeree's possession, without regard to whether it ever reached the offerer, unless the offer otherwise provides." Restatement, Contracts, sec. 64.

But, considered wholly without reference to the letter of plaintiffs dated January 24, and the rule as to implied authorization invoked thereby, we are persuaded that the presumption that was created by the facts disclosed in the evidence, viz., that defendant's letter of February 1 reached the addressee in due course of mail, is not rebutted by the proof offered in behalf of plaintiffs; that the question of fact arising from the conflicting evidence on this subject was for the trial court to determine, and that its judgment thereon is conclusive on this as a tribunal of review. *Papillon v. Brunton* (1860) 5 H. & N. (Eng.) 518; *Gresham House Estate Co. v. Rossa Grande Mining*

*Co.* (1870) W. N. (Eng.) 119; *National Masonic Accident Ass'n v. Burr,* 57 Neb. 437; *City of Omaha v. Yancey,* 91 Neb. 261; *Heyen v. State,* 114 Neb. 783; *Leininger v. North American Nat. Life Ins. Co.,* 115 Neb. 801.

Further, the evidence fairly established that, in reliance on the validity of the agreement effected by the oral negotiations and the two letters already referred to, defendant continued in possession of the premises after the expiration of its five-year lease for the period of the year terminating on February 28, 1930; that it paid the monthly rental of $275 as promised in its letter of February 1, which was accepted by plaintiffs; that it complied with all the other provisions of its lease, and tendered possession of the demised premises to plaintiffs and abandoned possession thereof on or prior to the last day of its extended term.

Plaintiffs insist that the lease, which defendant claims the evidence establishes for the year ending February 28, 1930, is not in writing, is not signed by the lessor, and is void under the statute of frauds (Comp. St. 1929, sec. 36-103); that the defendant, remaining in possession after the termination of the five-year lease, claiming under a void lease, and thereafter making payments of rent, became thereby a tenant from year to year, for the termination of whose tenancy the service of a six months' notice was necessary, which had not been given; further, that until such service of notice had been made upon the lessee its liability for rents would continue indefinitely. Under the facts in the instant case we are unable to agree with plaintiffs' contention. Of course, it is true that "A tenancy from year to year will be presumed, where a tenant remains in possession after the expiration of his term, and his tenancy is recognized by the landlord." *West v. Lungren,* 74 Neb. 105. But, "This rule is, however, only a rule of presumption, and the presumption is rebutted by proof of a different agreement, or of facts inconsistent with the presumption." *West v. Lungren,* 74

Neb. 105. See, also, *Montgomery v. Willis,* 45 Neb. 434; *Bradley v. Slater,* 50 Neb. 682.

The exact issue presented in this case for determination is not the validity of the extension agreement, for that has been fully performed. It is rather the legal effect of this act of the parties in view of the provisions of the statute of frauds, as negativing, preventing, or terminating the liability of the tenant for continued payment of rent indefinitely, in the absence of the service of a six months' notice by it. It will be noted that the liability here sought to be enforced is an incident of the five-year lease which, when coupled with continuing possession of the tenant after expiration thereof, and no further agreement disclosed, the lessee at his option may ordinarily enforce. It arises by implication of law. The nature of an estate from year to year is a lease for a year certain with a growing interest during every year thereafter, springing out of the original contract and parcel of it. *Legg v. Strudwick,* 2 Salk. (Eng.) 413; Bac. Abr., Leases, L. 3, 621. See, also, *Oxley v. James* (1844) 13 M. & W. (Eng.) 208. If the identical terms, which appellants contend are implied by law, were actually expressed in the formal provisions of the five-year lease, even conceding arguendo that the extension agreement in this case rests wholly on parol, it may not be doubted that the mutual rights of the parties would be determined by its terms, notwithstanding the statute of frauds. This court is committed to the view that, "While executory and before a breach, the terms of a written contract may be changed by a subsequent parol agreement; and such subsequent agreement requires no new consideration." *Bowman v. Wright,* 65 Neb. 661. True, "Where * * * the contract is one required to be in writing by the statute of frauds, there must be consideration for a modification by waiving some of its requirements, or else such new agreement must be executed." However, where the lessee has not covenanted, and is not bound, to remain in possession for any purpose, continuing in possession at the

request of the lessor may be a valid consideration for a modification by waiving some of the requirements of his leasē or changing the obligations thereof. See *Bowman v. Wright, supra.* In the instant case the renewal agreement was fully performed, and in reliance on the new agreement and in compliance with what was tantamount to a request of the lessor, defendant continued in possession of the leased premises after all possible duty so to do had expired under the five-year lease on February 28, 1929. It would seem that the power to thus change the terms of a written lease by parol undertakings would necessarily include the power to terminate or modify the incidents growing out of the same which spring out of the original contract and are a parcel of it.

But, is plaintiffs' position in this transaction such as permits them to invoke the protection of the statute of frauds as an essential element of their cause of action? In February, 1929, prior to the renewal agreement, defendant was charged with no duties to plaintiffs with reference to the demised premises, save to surrender it by midnight of February 28. Its five-year lease ended at that time, and its obligations would terminate with the seasonal delivery of possession thereof. However, it was induced by the request of plaintiffs, made orally and in writing, to enter into this contract of extension, and in reliance thereon, "amid the silence of plaintiffs," to remain in possession and pay rent as stipulated therein, after the termination of the five-year lease. Defendant remained in occupancy of the premises for the entire period of extension agreed upon, paid all rent accruing therein, kept its covenants created thereby, and surrendered or tendered the surrender of its leasehold in prompt conformity with the terms of its undertaking.

Plaintiffs now challenge this contract of extension as contravening the statute of frauds, and void; and by this action seek to impose upon defendant the burden of continued payment of rent as a tenant from year to year holding over under the terms of the five-year lease. This

liability was expressly negatived by the terms of the renewal contract, and its existence would have been utterly impossible without the continued possession of the leasehold by the defendant after February 28, 1929, which the contract now challenged induced.

In this connection it is to be remembered that this court is committed to the view that "The statute of frauds does not render a contract void, but voidable at the option of either party. But it does not require a party to ignore considerations of moral obligation, equity, and good faith, by pleading the same." *Bodie v. Robertson,* 113 Neb. 408. See, also, *Cresswell v. McCaig,* 11 Neb. 222.

Obviously, the plaintiffs are seeking to employ the statute of frauds as a sword, and are not attempting to make use of it as a shield. The circumstances here presented invoke the application of the following well-established principles:

"The statute of frauds, designed to prevent fraud and perjuries, will not be allowed to operate as a means of fraud either in permitting one guilty of fraud to shelter himself behind it, or in allowing its use as a means of perpetrating fraud." 27 C. J. 302.

"The statute of frauds can only be invoked to avoid an oral contract in case one is free from deceit and false representations." *Griffin v. Bankers Realty Investment Co.,* 105 Neb. 419. See, also, *Norton v. Brink,* 75 Neb. 566.

But the facts before us suggest another consideration. If this tenancy, due to the invalidity of the renewal lease, is to be deemed from year to year, still the right to terminate such a tenancy is an inseparable incident thereof. *Doe v. Browne* (1807) 8 East. (Eng.) 165; *Holmes v. Day,* 8 Ir. R. C. L. 235; *Western Transportation Co. v. Lansing,* 49 N. Y. 499. The approved method in accomplishing this result is by agreement of the parties, express or implied, or by notice given six calendar months ending with the period of the year at which the tenancy commenced. *Critchfield v. Remaley,* 21 Neb. 178. The six

months' notice may be either in writing or verbal. 2 Taylor, Landlord and Tenant (9th ed.) 482; *Lord Macartney v. Crick,* 5 Esp. (Eng.) 196; *Timmins v. Rowlinson,* 3 Burr. (Eng.) 1603; *Eberlein v. Abel,* 10 Bradw. (Ill.) 626; *Thamm v. Hamburg,* 7 Phila. (Pa.) 266. And such notice may be served so as to afford the party notified six months before the expiration of the next or any following year. *Right ex dem. Flower v. Darby* (1786) 1 T. R. (Eng.) 159.

It appears in the case of *General Assurance Co. v. Worsley* (1895) 64 L. J. Q. B. (Eng.) 253: "On the 11th of January, 1892, a tenant wrote to his landlord's agents as follows: 'I hereby give you notice that I wish to terminate my tenancy of the offices. Will you kindly let me know when my tenancy will expire?' The reply, dated the 13th of January, was: 'On referring to your agreement we find that six months' notice must be given to terminate on the 1st of July in any year; you therefore hold the rooms till July, 1893.' Held, that a valid notice to quit had been given and accepted, and that the tenant was not liable for rent after the 1st of July, 1893."

Under this rule it would seem that the letter of February 1 plainly discloses an intent on the part of the tenant to terminate the tenancy commencing on March 1, 1929, on the 28th day of February, 1930, and ample as a six months' common-law notice to accomplish that purpose.

However, it will be remembered that this jurisdiction is committed to the rule that the presumption arising from the continuance of a tenant in possession after termination of his term and the payment of rent may be rebutted by proof of "facts inconsistent with the presumption." *West v. Lungren,* 74 Neb. 105. As to the payment of rent, it was early determined that "The receipt of rent by the landlord is not conclusive as to the continuance of the term, but it is an equivocal act to be determined by the *quo animo.*" *Pusey v. Presbyterian Hospital,* 70 Neb. 353.

158

In a case involving a question similar to the one here considered, the supreme court of Alabama, after pronouncing the rule as to presumption in terms similar to the one here adopted, further say: "Presumption of renewal of lease by tenant merely holding over is rebutted by proof of a new contract materially different from the original lease, and this, notwithstanding the new contract is void by the statute of frauds, because verbal, and not to be performed within a year from the making thereof." *Crommelin v. Thiess,* 31 Ala. 412, 70 Am. Dec. 499.

In *West v. Lungren,* 74 Neb. 105, where the facts were that a tenant from year to year held possession for the agricultural year of 1902 (March 1, 1902, to March 1, 1903) under an oral agreement made November, 1901, for that period, this court, notwithstanding the reference to the statute of frauds in the briefs, held in effect that the oral lease followed by possession thereunder obviated the necessity of service of the six months' notice to terminate the tenancy.

It is obvious that the express determination of the force and effect of the statute of frauds in this case, and the validity of the contract of renewal as such, may not be required in the proper disposition of this case. We are convinced that the facts established by this record are at least wholly inconsistent with the presumption on which plaintiffs' cause rests, and are ample to rebut the same.

The judgment of the district court is correct, and is

AFFIRMED.