## FERGUSON v. SANDERS et al.
### No. 12784.

Court of Civil Appeals of Texas. Dallas.
Oct. 7, 1939.

Rehearing Denied Nov. 25, 1939.

Jot Horton, of Sherman, for appellant.

C. O. Boothman, of Austin, and James & Conner, Calhoun Anderson, and Earnest Sanders, all of Fort Worth, for appellees.

LOONEY, Justice.

A. M. Ferguson, individually and as trustee for all the stockholders of Ferguson Seed Farms, Inc. (in process of liquidation), sued F. T. Sanders and J. M. Crawford (composing the firm of Sanders and Crawford), resident citizens of Haskell County, Texas, for an accounting and to recover certain sums of money alleged to have accrued under a consignment of a carload of cotton-seed.

The defendants filed pleas of privilege to be sued in Haskell County, where they resided, that were controverted by the plaintiff, on the alleged ground that, defendants contracted in writing to perform the obligation sued upon in Grayson County, Texas, where the suit was instituted. On hearing, the trial court sustained defendants' pleas and changed the venue of the cause to the District Court of Haskell County, from which plaintiff appealed. Plaintiff does not contend that the defendants, or either of them, signed a written agreement to perform the contract sued upon in Grayson County, but does contend that, under the doctrine of acquiescence (announced in certain cases cited), defendants constructively, contracted in writing, to perform in Grayson County.

The facts sustaining the judgment below, are these: The Ferguson Seed Farms, Inc., was engaged in the business of growing, breeding, and selling bred-up field seeds, among others, cotton-seeds; the defendants being engaged in the business of ginning in the town of Haskell, Haskell County, Texas, also handled cotton-seed, that is, bought cotton-seed for sale to planters. Early in April, 1930, defendants were solicited by A. M. Ferguson, who represented the corporation, to purchase some of its bred-up cotton-seed, but as defendants declined to purchase, the parties entered into a parol agreement, substantially as follows, that is to say, the

corporation agreed to consign defendants (when notified) a carload of cotton-seed, defendants agreeing to advance freight charges, receive and store the seed and endeavor to sell same for the account of plaintiff, at not less than $2 per bushel, nor for a smaller cash payment than 75¢ per bushel, taking purchaser's note for balance, payable to the corporation on forms furnished by it, defendants agreeing to account to the corporation for the entire proceeds arising from the sales of seed, that is to say, would pay all cash collected and forward notes of purchasers, less the amount of freight charges advanced, to be retained by defendants out of the first cash received from sales. No understanding was had that the agreement would be reduced to or confirmed in writing, or that, defendants would pay the corporation any amount accruing under the contract in Grayson County or perform any of its obligations there.

Plaintiff's contentions are to the effect that, the parol agreement was later confirmed by an instrument enclosed with a letter written to the defendants, dated April 14, 1930, containing among other things, a statement that, all differences between the parties were payable in Sherman (Grayson County), Texas; also, that, on May 3, 1930, the corporation mailed defendants an invoice of the car of seed, stating among other things that, payment therefor was to be made in Sherman, Texas; also that the corporation sent defendants certain catalogues for distribution, containing among other things, a statement to the effect that, all payments for cotton-seed sold were to be made in Sherman; that the defendants accepted, acted upon, and acquiesced in the language of the confirmation, the invoice, and the catalogues, thereby, within the meaning of subdivision 5, article 1995 of the Venue Statute, Vernon's Ann.Civ.St. art. 1995, subd. 5, agreed in writing, to perform the obligations of the contract in Grayson County.

Answering the several contentions of plaintiff, defendants say that, the oral agreement entered into between the parties was complete and was not thereafter, in any manner, changed or modified by mutual consent; that the alleged confirmation was never received by the defendants, but if received, was never acquiesced in or agreed to; that, upon receiving the invoice, defendants refused to acquiesce in or comply with its terms, because at variance with the prior parol agreement, and further that, the catalogue formed no part of the agreement.

Plaintiff introduced evidence tending to show that, on April 14, 1930, a letter was mailed to the defendants, stating, in effect, that a confirmation and shipping advice in regard to the order for 1500 bushels of cotton-seed were enclosed. The alleged copy of the confirmation introduced in evidence, seemingly, was on a blank form used when either a sale or consignment, such as the one under consideration, was entered into, containing among other language applicable to a consignment, the following: "Reports and remittances on sales and collections: The first collections on sales and collections are to be applied to reimburse you for the freight paid, after which all receipts on sales or collections, or an initial cash payment on the note-agreement, both principal and interest, are to be remitted to the Ferguson Seed Farms on May 1st, 1930, May 15th, 1930, June 1st, 1930, and on the 1st and 15th of each month during the ginning season, with the further special agreement: * * *" The confirmation contained a number of onerous provisions not a part of nor included in the parol agreement; among others, the provisions just quoted.

Mr. Sanders, who represented his firm in all the transactions involved here, testified that, while he may have received the letter of April 14, in regard to which he could not be positive, testified positively that he did not receive the confirmation; that the confirmation contained provisions, not mentioned in the verbal negotiations, that would not have been agreed to by him.

The court having resolved all controverted issues of fact in favor of the defendants, necessarily found that the written confirmation of the verbal agreement was not received by the defendants, hence was not acquiesced in by them. However, if it be assumed that, the confirmation in fact was received, as contended by plaintiff, yet, as it contained a venue provision not previously agreed upon, ex parte in nature, the same was not binding upon defendants, because not assented to by them in writing. As will hereafter be shown, plaintiff could not, in that manner, impose upon the defendants a provision compelling performance in Grayson County.

A good rain having previously fallen over the region, on April 28, the defendants wrote the corporation to ship the seed "whenever you get ready"; and on May 3rd, the corporation wrote defendants, enclosing an invoice covering the shipment, stating among other things, that "bill of lading with draft attached has gone forward to the Haskell National Bank for 75¢ per bushel less the freight, as noted in the invoice"; also contained the following: "Cash with order seed f. o. b. our station (Howe, Grayson County), all accounts and claims payable in Sherman, Texas. Draft 75¢ per bu. less frt. $134.40, balance to be carried by special note-agreement" (referring to purchaser's notes); also the following: "All orders are accepted subject to the conditions that all accounts, or claims, arising therefrom are payable and performable in Sherman, Texas, under the terms of "Ferguson's Stringless Guarantee of 'Satisfactory Seeds or Money Back,' just as given in our Catalog." The catalogue referred to contained, among other printed matter, the following: "Terms: All seeds are cash with order, seeds F. O. B. our stations. Remit by check or money order. We do not send seeds C. O. D. or S/O, unless satisfactory reference is given, or one-fourth the amount sent with the order. All accounts or claims resulting from sales are payable in cash or equivalent, in Sherman, Texas."

On receipt of the invoice and notice that draft had been drawn on them for 75¢ per bushel less freight, defendants wired the corporation, as follows: "We are not willing to pay your draft, will pay freight and deduct from cash payments we get when we sell seed". Answering, same day, the corporation wired defendants, as follows: "Haskell National Bank has been authorized to release bill of lading to you"; also, on same day, through its sales manager, Mr. Maloney, wrote defendants, among other things, the following: "I handled this matter with Mr. Ferguson and he decided that we would make an exception in this case and release the Bill of Lading to you, authorizing the bank to hold the draft and as you sell this seed daily at the end of each day you will turn in to the Haskell National Bank your collections to be applied on this draft. This method of handling will not make it necessary that we change our records or that the bank change their records. It is our intention

to have Sam Johnston go to Haskell and assist you in disposing of this car of seed."

If the terms stated in the invoice could be considered applicable to a consignment, which we think doubtful, yet being in excess of the parol agreement, were expressly rejected by the defendants, who wired the terms on which they were willing to accept the shipment, that is, would pay freight and reimburse themselves from cash received when sales were made; these terms being in accordance with the original agreement, as testified to by Mr. Sanders, and in our opinion, were assented to by both Mr. Ferguson and Mr. Maloney, sales manager, who stated in his letter to the defendants, that the bank had been authorized to release the bill of lading, that it would hold the draft and, as defendants sold seed, they should turn into the bank the collections to be credited upon the draft. With reference to the catalogue or pamphlets, containing the language heretofore set out, Mr. Sanders testified that he regarded it simply as advertising matter sent to aid in selling the seed, and had no recollection that he had read it through.

Plaintiff insists that, a contract in writing, binding defendants to perform the obligations of the verbal agreement, in Grayson County, resulted from the disconnected, fragmentary ex parte language of invoice and catalogue. A number of decisions are cited in support of that contention, substantially all were cases adjudicated before the statute involved was amended in 1935. As stated in the emergency clause, the amendment was brought about because of "the unsettled state of the law as to the contract clause of the Venue Statute". As amended, the statute reads: "If a person has contracted in writing to perform an obligation in a particular county, expressly naming such county, or a definite place therein, by such writing, suit upon or by reason of such obligation may be brought against him, either in such county or where the defendant has his domicile." See Chap. 213, Regular Session 44th Leg., p. 503, Vernon's Ann.Civ.St. art. 1995, subd. 5.

■■ It is obvious, we think, that the uncertainty in regard to the state of the law as to the contract clause of the venue statute (subdivision 5), mentioned in the emergency clause of the amending act, resulted from court decisions in cases

arising under the statute before being amended. The strong language employed in the caption and in the body of the Act, in our opinion, means that, before it can be said that one has bartered away his venue privilege, the writing, relied upon to show such fact, must distinctly specify the particular county of performance. The parol agreement having been consummated, without mentioning the place of its performance, we do not think the Corporation could add a venue provision, by language incorporated in the invoice, afterwards mailed to the defendants, or by language appearing in catalogues, afterwards supplied defendants as advertising matter.

In Smith Grain Co. v. H. H. Watson Co., Tex.Civ.App., 285 S.W. 868, 869, the San Antonio Court had under consideration a contract consummated by an exchange of telegrams; and, as in the instant case, nothing was said as to venue or place of performance. However, after closing the trade, plaintiff wrote a letter to the defendant, confirming the trade and stating "Any differences arising under this contract are made due and payable at Dallas, Texas". Disposing of the question of venue involved, the court said: "None of the messages by wire contained anything about fixing the venue in Dallas county. The contract was made by the wires and could not be changed by any letter written afterwards by either party. Nothing was said in the telegrams as to the destination of the grain." And again: "When the contract was closed through the telegrams, no place of destination was mentioned, and appellee could not change the contract by writing a letter to which appellant did not subscribe or agree." In Watson v. Howe Grain & Mercantile Co., Tex.Civ.App., 214 S.W. 843, 844, the Texarkana Court of Civil Appeals had under consideration a trade closed in a telephone conversation, after which plaintiff mailed to the defendant a letter of confirmation, setting forth the terms upon which the commodity was purchased. With reference to the venue question involved, the court said: "The principal ground relied on by the appellee to sustain the ruling of the court is that the contract in this instance was in writing and comes under the provisions of exception 5 to article 1830 of the Revised Civil Statutes. The testimony does not sustain that construction. It appears from the evidence quoted that the contract was completed in the conversation over the phone, and that the letter added nothing to its provisions. The cases referred to by the appellee as sustaining the ruling of the court are, we think, inapplicable." In H. H. Watson Co. v. Alfalfa Growers' Exchange, Tex.Civ.App., 300 S.W. 199, 201, the Eastland Court of Civil Appeals had under consideration a contract consummated by an exchange of telegrams, defendant agreeing to ship plaintiff hay to certain points in Texas that might be designated and, after a part of the hay had been shipped, plaintiff wired defendant to ship the remainder to Dallas, and contended that this telegram was a part of the contract requiring performance in Dallas County hence that, venue of the suit was maintainable in Dallas County, with reference to which the court said: "The contract was completed by the exchange of the telegrams noted, and, although while unperformed it could have been modified without a new consideration arising, still there is nothing in the original agreement stipulating that the designation by appellant of the destination of the hay should be in writing." The recent case of Maudr v. Ansley, Tex.Civ.App., 109 S.W.2d 501, 503, was by the Eastland Court, in which, after noting that the original negotiations between the parties did not contemplate that the contract or contracts should later be reduced to writing, with stipulations for performance in Taylor County, it was said: "The contract for the sale and delivery of the cotton was by parol entered into in Taylor county, Tex., between plaintiff and defendant through his agent, Dalrymple. * * * The fact that appellant acknowledged the justice of the obligations, paid the drafts, and received the cotton to which he was entitled under the original understanding, should not, under the facts of this case, be held to create the alleged written contracts in this suit. If a term or condition of a contract can thus be added or taken therefrom, without the mutual assent of the parties, other provisions of the contract may be so altered by an act of ex parte or unilateral nature. In such situation a debtor by paying in fact what he owes would be bound by the terms of another contract inserted in a draft without his knowledge or consent. Evidently the drafts, and especially the clause relating to venue, formed no part of such sales contracts, and payment of the drafts under the circumstances created no written contract (by acceptance or acquiescence) binding the defendant to pay

in Taylor county such other sums as might become due plaintiff on the final determination of cotton prices."

We are of opinion, therefore, that, it was not competent for the plaintiff, after the consummation of the parol agreement, to add a provision fixing the place of its performance, not expressly agreed to in writing by the defendants.

We do not think the court erred in changing the venue of the cause to Haskell County, therefore affirm the judgment.

Affirmed