**VINCENT v. GLOBAL CORPORATION.**

No. 5930.

Court of Civil Appeals of Texas. Amarillo.
Dec. 20, 1948.

Rehearing Denied Jan. 17, 1949.

Underwood, Wilson, Sutton, Heare & Boyce, of Amarillo, and James W. Witherspoon, of Hereford (H. A. Berry, of Amarillo, of counsel), for appellant.

Simon & Simon, of Fort Worth, and Bradley, Key & Kimmel, of Lubbock, for appellee.

STOKES, Justice.

Appellee, Global Corporation, its office and place of business being located in Lubbock County, instituted this suit in the district court of that county against the appellant, J. H. Vincent, a resident of Lamb County, for $60,935.22, alleged damages accruing to appellee by the failure of appellant fully to comply with a contract under which appellant sold to appellee 5,000,000 pounds of milo, a sorghum grain. The agreed price of the milo was $1.85 per hundredweight and it was to be delivered f. o. b. Texas Common Points. Appellant delivered to appellee only 1,127,580 pounds of the milo and appellee alleged it was forced to go into the market and pay an advanced price for the remaining 3,872,420 pounds and the alleged excess paid therefor was the sum sued for and for which it prayed judgment.

Appellant filed a plea of privilege in due form in which he prayed that the venue of the case be transferred to Lamb County, the county of his residence. Appellee duly controverted the plea of privilege and alleged the suit was properly brought in Lubbock County under the provisions of Subdivision 5, Article 1995, Vernon's Ann. Civ.St., which provides that, if a person has contracted in writing to perform an obligation in a particular county, expressly naming such county or a definite place therein by such writing, suit upon, or by reason of, such obligation may be brought against him, either in such county or where the defendant has his domicile.

The issues made by the plea of privilege and the controverting plea were submitted to the court, without the intervention of a jury, and resulted in a judgment overruling appellant's plea of privilege. He duly excepted, perfected an appeal to this court and presents the case for review upon two assignments of error in which he contends, first, that the court erred in overruling his plea of privilege because the evidence conclusively showed that any contract or agreement made between the parties for the sale and purchase of the grain was not in writing, but was oral, and therefore did not come within the purview of Subdivision 5 of Article 1995. Secondly, he contends the court erred in overruling his plea

of privilege because the purported written confirmation of the sale, upon which appellee relied as a written contract, is not sufficient in its terms to hold venue in Lubbock County of a suit by appellee for breach of the contract through failure to deliver grain because the written confirmation does not obligate appellant to deliver the grain in Lubbock County and it contains no provision under which suit for damages for failure to deliver the grain may be maintained in that county against his plea of privilege.

The only witness to testify in the case was Homer Hunt, vice-president and manager of the appellee, Global Corporation, and the testimony is therefore uncontroverted. The negotiations began on the 14th or 15th of May, 1947, when appellant and Homer Hunt had a conversation over the telephone. Appellant was at his place of business at Sudan in Lamb County and Hunt was at Lubbock. In the conversation they discussed a sale by appellant to appellee of 5,000,000 pounds of milo at the price of $1.85 per hundredweight. The proposed transaction constituted the subject of another conversation between them by telephone on the 16th or 17th of May, and again on the 18th or 19th of that month. No definite contract of sale was entered into, however, until the last conversation on the 18th or 19th in which appellant told appellee's manager, Hunt, that he would sell to appellee the quantity of grain theretofore discussed at the price of $1.85 per hundredweight, deliveries to be made in September, October, November and December of 1947, divided equally each month or all in September or October at appellant's option. In that conversation appellant was told by Hunt that appellee would have to negotiate with a number of buyers before it would know whether or not it could find a market for so large an amount of the grain and appellant told Hunt that he, appellant, was leaving and would be out of the State for a few days, but that he would leave the matter open. Hunt then told appellant that, if appellant would leave the matter open, and appellee could find a buyer, it would "immediately tie them up and confirm to you," which we interpret to mean appellee would re-sell the grain to its customers, if it could do so, and immediately confirm the sale from appellant to appellee. Appellant informed Hunt that appellant would be out of the State for the next few days but that, if he found he could handle the grain, he may proceed to re-sell it without any formal confirmation. On the 20th of May, 1947, appellee succeeded in re-selling all of the 5,000,000 pounds of grain to its customers and its manager, Hunt, called appellant's place of business over the telephone. Appellant being absent and out of the State, Hunt had a conversation with a Mr. Chester at appellant's elevator, the details of which is not shown by the testimony. On that same day, however, appellee sent a telegram to appellant as follows: "This will confirm purchase from you of five million Milo #2 Basis at 1.85 cwt. F.O.B. T.C.P. as per our telephone conversation between J. H. Vincent & Mr. Chester. Shipment equal amounts Sept., Oct., Nov., and Dec., 1947, or all can be shipped in Sept. and Oct. Texas Official Grade. Destination official weight #3, #4, or sample grades at regular discount."

On the same day, May 20, 1947, appellee, acting by its manager, prepared and forwarded to appellant by mail a written confirmation in substantially the same terms as the telegram, to which was added, however, the following provision, "Draft to reach us through Citizens' National Bank. This contract to be fully completed at Lubbock, Texas. If any feature of this contract as above is not in accordance with understanding of your sale, immediately wire exception must be made otherwise contract to stand as written."

After the contract of sale was completed, and the crops in the vicinity matured and were harvested, appellant proceeded to buy and ship the milo to the points and in the manner directed by appellee and, when each car was shipped, he would draw a draft on appellee, with bill of lading attached, through the Citizens' National Bank of Lubbock. The drafts were paid promptly and the record shows that appellant would have been able to complete his contract with appellee but for the fact that railroad cars became scarce and were not available.

The case, as presented by the assignments of error and the briefs, must turn upon the question of whether the contract between the parties was completed by the telephone conversations or whether it consisted of the written confirmation mailed to appellant by appellee on May 20, 1947. If it consisted of the written confirmation, we think the writing was sufficient to comply with the provisions of Subdivision 5 of Article 1995, R.C.S. and it would necessarily follow that no error was committed by the court in overruling appellant's plea of privilege. If, on the other hand, the contract consisted of, and was completed by, the telephone conversations, and nothing was added to the contract by subsequent agreement that was not contemplated by them, it would follow that the contract of sale was not a contract in writing and therefore would not be governed by that subdivision.

In our opinion the contract was not completed and closed by the telephone conversations alone on May 18th or 19th, 1947. The undisputed testimony showed that, after appellant and appellee had agreed upon the amount and price of the grain, appellee told appellant it would have to communicate with its customers before it would know whether or not it could handle and re-sell so large a quantity and appellant told appellee's manager to proceed with his efforts to place the grain and that appellant would leave it open. In our opinion that could only mean that appellant's proposition to sell the grain to appellee would be left open a reasonable length of time in order to give appellee an opportunity to find a market for the grain and that, if it found a market, it could proceed to dispose of it and that appellee would, in some manner, confirm the sale in accordance with the agreement made in the telephone conversations. Appellant then left on a trip which took him out of the state but, on May 20, appellee succeeded in finding purchasers for the grain and its manager, Homer Hunt, immediately communicated with appellant's place of business at Sudan over the telephone. While the conversation was not fully shown by the testimony, Hunt testified that, immediately after the telephone conversation, he sent to appellant at Sudan the telegram of May 20, 1947. The telegram purported to confirm the purchase "as per our telephone conversation between J. H. Vincent & Mr. Chester." It is evident that the telegram embodied the substance of the conversation and that the telephone conversation with Chester was had before the telegram was sent. The written confirmation was mailed on the same day and, according to Hunt's testimony, it was possibly within an hour or so after the conversation and after the telegram had been sent. It will be noted that nothing was said in any of the conversations over the telephone about a written confirmation. The confirmation sent by mail on May 20 was therefore not in compliance with any prior agreement between the parties and cannot be considered a portion of the negotiations conducted prior to the time it was mailed. Moreover, nothing was said in any of the telephone conversations concerning drafts or bills of lading and although appellant drew drafts on appellee through the Citizens' National Bank at Lubbock and attached bills of lading to them, it cannot be said that that method of executing the contract was pursuant to any agreement or constituted a portion of any prior contract. It was merely a convenient method of executing the contract that had theretofore been made by the conversations and had nothing to do with the original contract of sale.

In our opinion the contract between the parties was fully consummated when appellee confirmed the sale in the telephone conversation with Chester on May 20, 1947. We think the testimony was ample to support that conclusion but if, by reason of its scanty nature as to the details, its sufficiency should be questionable, then certainly the contract was finally closed when appellee sent the telegram to appellant at Sudan on the same day. Even if the telegram should be considered the final act of confirmation and therefore the sale was confirmed in writing, the telegram did not contain any provision that further confirmation would be made, nor that the contract or obligation would be performed in any particular county, nor that written drafts or bills of lading should constitute

a portion of it. The contract for the sale and delivery of the grain was therefore by parol. In any event it does not come within Exception 5 of Article 1995. Bowen v. Speer, Tex.Civ.App., 166 S.W. 1183; Corcoran v. Leon's Inc., 126 Neb. 149, 252 N.W. 819.

The act of appellee in sending to appellant by mail a written confirmation in which provisions were inserted that were not included in the contract theretofore made and concluded could not affect the prior contract unless the written confirmation was subsequently approved and agreed to by the appellant and the evidence does not reveal any such approval or agreement. Maudr v. Ansley, Tex.Civ.App., 109 S.W.2d 501; Smith Grain Co. v. H. H. Watson Co., Tex.Civ.App., 285 S.W. 868; Ferguson v. Sanders, Tex.Civ.App., 133 S.W.2d 806; Watson v. Howe Grain & Mercantile Co., Tex.Civ.App., 214 S.W. 843; H. H. Watson Co. v. Alfalfa Growers' Exchange, Tex.Civ.App., 300 S.W. 199.

Appellee contends the court properly overruled appellant's plea of privilege because appellant received the written confirmation and retained it without making any objection to it. It asserts that the provision contained in it that drafts should be drawn through the Citizens' National Bank and that the contract was to be fully completed at Lubbock, Texas, bound appellant to the terms of the written confirmation, and it cites the case of Berlowitz v. Standley, 117 Tex. 362, 5 S.W.2d 963, 964, as supporting the contention. In that case a conversation was had by telephone between Standley at Huntsville and Berlowitz at Houston in which Standley agreed to sell Berlowitz a number of bales of cotton. It was agreed in the telephone conversation that the cotton would be delivered to Berlowitz at Houston and that drafts would be drawn on Berlowitz with bills of lading attached. The Supreme Court said: "Under the telephone contract the cotton was sold on condition of payment of the sellers' drafts. The sale would remain incomplete, with the title in the sellers, until this condition was complied with. * * * The bills of lading and the sight drafts constituted written contracts on the part of the sellers to deliver at Houston, in Harris county, cotton of such weights and grades as would be worth, at the contract prices the amounts of the drafts. * * * With the written contracts obligating the sellers to deliver the cotton in Houston and reserving title in the sellers until the sight drafts were paid, suit was properly brought in Harris county, under subdivision 5 of the venue statute." As we have already shown, the telephone conversation between appellant and appellee's manager, Hunt, and the telephone conversation of May 20 between Hunt and Chester constituted a complete contract of purchase and sale of the grain and no provision or suggestion was made in any of the telephone conversations about a written confirmation, bills of lading, drafts or any other written document. None was necessary therefore, as far as the contract of sale was concerned, because the contract, as made, was sufficient legally to bind the parties and any written contract, letter or confirmation thereafter prepared and forwarded to appellant added nothing to it that was of a binding nature.

Appellee also cites the case of Gottlieb v. Dismukes, Tex.Civ.App., 230 S.W. 793, and insists that the instant case is controlled by the holding in that case. There, Dismukes, in Gonzales County, telephoned to Gottlieb, in Williamson County, and offered to sell certain corn. Gottlieb told Dismukes that he would prepare and mail to Dismukes a written confirmation of the transaction. Gottlieb afterwards prepared such written confirmation, mailed it to Dismukes, who accepted it, and the transaction was conducted in accordance with its terms. No such agreement was contained in the telephone conversations involved in this case and it is clear the cited case is not in point here. Other similar cases are cited by appellee and we have examined all of them. Some of them hold that, where a written confirmation is contemplated by the original negotiations and it is prepared by one party and forwarded to the other and retained by him without objection, it becomes the contract between them. Others hold that, where the original contract provides for drafts with bills of lading attached, such as the Berlowitz case, and that method is adopted in executing the contract, title to the commodity does not pass out of the

seller until the drafts are paid and venue is properly laid in the county where the drafts are payable. Since we have none of those questions before us, the cases cited are of no consequence in determining the questions involved in this case.

In our opinion the contract sued upon by appellee was not in writing. In any event, under the evidence, no obligation to perform the contract in Lubbock County or any other particular county was shown and appellant's plea of privilege should, therefore, have been sustained. The judgment of the court below will be reversed and the cause remanded with instruction that the venue of the cause be transferred from the District Court of Lubbock County to the District Court of Lamb County.