**PRODUCERS GRAIN CORPORATION, Appellant,**

v.

**John RUST, d/b/a John Rust Grain Company, Appellee.**

No. 6605.

Court of Civil Appeals of Texas.

Amarillo.

May 28, 1956.

Rehearing Denied June 25, 1956.

Underwood, Wilson, Sutton, Heare & Boyce, Amarillo (H. A. Berry, Amarillo, of counsel), for appellant.

McWhorter, Cobb & Johnson, Lubbock, for appellee.

PITTS, Chief Justice.

This is an appeal from a "take nothing" judgment in a case in which appellant, Producers Grain Corporation, sued appellee, John Rust, for the alleged breach of a grain sales contract between the parties and appellee defended primarily on the grounds that, as a result of negotiations concerning the subject matter, there was no meeting of the minds of the party litigants and therefore no contract existed between them. By agreement of the parties, the case was withdrawn from the consideration of a jury and left to the discretion of the trial court

to determine, as a result of which appellee's principal defensive matters were sustained by the trial court, which rendered judgment accordingly, from which an appeal has been perfected.

At the request of appellant, the trial court made and filed its findings of fact and conclusions of law which were consistent with its judgment, and all of which were timely objected to and excepted to by appellant, who sought to no avail additional findings. Appellant predicates its appeal upon the alleged erroneous findings of fact and conclusions of law filed by the trial court. Appellant charges reversible errors were committed by the trial court because of its failure and refusal to find and conclude that there existed a valid contract between the parties; that the same was breached by appellee and that appellant was entitled to its alleged damages by reason of the breach.

The parties joined issues in the pleadings and we find little controversy in the oral testimony given by the parties themselves concerning the facts. Appellee, John W. Rust, was in the grain business in Lubbock County and had been for 16 years. Carl D. Ferguson was a cash grain broker associated with C. M. Carter Grain Company of Fort Worth, Texas, where he had resided for about 40 years. Producers Grain Corporation was in the grain business in Amarillo, Texas, with Frank Pharris as its assistant general manager. The negotiations concerning the transactions were had between Rust, Ferguson and Pharris. On January 9, 1951, Carl Ferguson called Frank Pharris by telephone and inquired if Producers Grain Corporation had any milo for sale and Pharris told Ferguson they had a million pounds of milo they would sell at $2.65 per cwt. Ferguson then called John W. Rust the same day by telephone and asked Rust if he wanted to buy a million pounds of milo at $2.65 per cwt. TCP (Texas Common Points) and Rust told Ferguson he would take the grain if he could get 14% moisture or less. Ferguson told Rust that Producers Grain Corporation had the milo and he would be dealing with it in the transaction but Ferguson also told Rust that he would contact Producers Grain Corporation and wire Rust a confirmation. Thereafter, on the same day, Ferguson called Pharris again and told him that John Rust would take the million pounds of milo if it were 14% moisture or less and Pharris told Ferguson "that's all right with us because that's about the only kind of grain we have anyway." The record reveals that on the same day (January 9, 1951) Ferguson sent Rust the wire of confirmation which Rust admits he received. As a result of the foregoing uncontroverted negotiations, Rust testified that he understood at the time that he was buying the grain from Producers Grain Corporation through Ferguson; that he received the wire of confirmation from Ferguson without complaint to anybody about its contents; that he continued to recognize the fact that he had bought the said grain from Producers Grain Corporation through Ferguson, the broker, and that he recognized the same to be true on the day of the trial.

The record also reveals that the grain was referred to by the parties as "#2 yellow milo," and that the parties agreed upon shipment of the grain by appellant to appellee during the first half of February, 1951, with appellee agreeing to give appellant five days shipping notice and appellee was also given the privilege however of taking delivery of the said grain if he desired at any time through the month of April, 1951, with the understanding that 2¢ per cwt. would be charged against him by appellant for each 15 days or fraction thereof, beginning February 16, 1951, that shipment may be delayed by reason of appellant's failure to give shipping instructions. In addition to the telegram of confirmation sent by Ferguson to appellee Rust, Ferguson likewise on the same date and on the date of the negotiations (January 9, 1951) sent by mail to both appellee, the buyer, and appellant, the seller, a written similar confirmation (No. 63) of the sale of the million pounds of "#2 or better yellow milo, 14% or less moisture" at a price of "$2.65 per cwt and del'd. TCP" and the following language thereafter contained therein:

"February, buyers option, 5 days shipping notice to be given seller buyers privilege of carrying thru April at a cost of 2¢ per cwt for each 15 days or fraction thereof beginning February 16th Lubbock or Amarillo official weights and grades as buyer will instruct later from Amarillo or Lubbock on once applied west Texas billing good for two more free transits draft and all papers to you at Lorenzo, Texas.

"It is also agreed that this confirmation is part of the contract and its acceptance without notifying us of error herein, is acknowledgement of contract as above. It is agreed that all claims and difference under this contract are. due and payable at Fort Worth, Texas."

Both appellant and appellee timely received the confirmation by mail. However, before appellant knew Ferguson had sent it and appellee a confirmation, it, through its agents, caused to be sent to appellee Rust, a confirmation (# 632) of date January 9, 1951, (the same date of the negotiations and of the Ferguson confirmation) of the said grain sale to appellee by appellant through Ferguson, showing the same amount, same price and the same delivery date with appellee's option of a later delivery from February 16 through April, 1951, at a cost of 2¢ per cwt. for each 15 days or fraction thereof. But appellant therein described the grain only as "#2 Yellow Milo" without showing the moisture percentage thereof and this confirmation contained the following printed language in conclusion:

"We do not accept any liability, save for our negligence if grain does not arrive according to billing instructions. On all 'Delivered' sales unless otherwise agreed, we reserve the privilege of routing all shipments. Demand drafts with bills of lading attached to be paid on presentation. This contract is subject to extension of time in case of strikes, car shortage, embargoes or all delays beyond our control and is subject to no penalty because of these reasons for non-ship-

ment. Receipt of this contract by the buyer, without immediate notice by wire to us of error, is an acknowledgment of acceptance of all conditions thereof."

This latter confirmation sent by appellant was later received by appellee, who did not at any time complain or communicate any error or any inconsistencies between the terms of the grain sales contract and either of the confirmations furnished to him.

Appellee testified in effect that he knew appellant was waiting for a shipping order from him and that he had not ordered any of the grain shipped to him but on or about April 14, 1951, through a telephone conversation with Carl Ferguson, he obtained from appellant an extension of time for the shipment of the "million pounds of #2 yellow milo" which he "had bought from Producers Grain," through July, 1951, and that Ferguson sent him a telegram of date April 14, 1951, confirming the said extension, which telegram he received; that he also received a letter of date April 14, 1951, from Carl Ferguson confirming appellant's extension of time through July, 1951, on the same previous terms of 2¢ per cwt. for each 15 days or fraction thereof for delayed shipment; that he did not order any of the grain shipped to him at any time through July 1951; that he received a letter from Frank Pharris, of Producers Grain Corporation, of date August 13, 1951, concerning appellee's failure to order the grain shipped at any time to him and he likewise received a telegram of date August 17, 1951, concerning the same matter; that on September 6, 1951, this suit was filed and he was duly served with citation, after which he filed his first answer to the suit on September 14, 1951; that more than two months thereafter, on November 19, 1951, notwithstanding the fact that the terms of the agreement between the parties had expired on July 31, 1951, appellee gave appellant shipping instructions for the grain in question in a telegram sent to Producers Grain Corporation containing the following language:

"Shipping Instructions On One Million Pounds Milo Contract Number 632

Please Ship This Milo To J W Rush Grain Co Lubbock Tex Notify J W Rush Grain Co Lorenzo Texas Draft And All Papers To Lorenzo State Bank Contract Price Delivered TCP 2.65 Per Hundred Carrying Charges 38 Cents Per Hundred I Would Like To Have Not Later Than November 29, 1951 Billing—"

According to the record and the terms of the agreement between the parties, the time for shipping the grain had been once extended by appellant from April through July, 1951, at the request of appellee but the period of time for such shipment had expired on July 31, 1951, and appellant had thereafter, on August 22, 1951, sold the grain in question to another purchaser after having first advised appellee twice it would be compelled to sell the grain to another buyer because of appellee's failure to send appellant shipping orders for the grain in accordance with the terms of the agreement.

█ The record conclusively reveals that on January 9, 1951, the grain broker, Ferguson, got permission from appellant to represent it in selling a million pounds of milo at $2.65 per cwt.; that Ferguson immediately thereafter and on the same day sold the said grain for appellant to appellee, provided it contained 14% or less moisture, and Ferguson agreed to contact appellant about the matter and wire appellee a confirmation; that Ferguson immediately thereafter and on the same day contacted appellant and advised that a sale of the grain had been made to appellee provided it contained 14% or less moisture, to which appellant agreed and further said that such was about the only kind of grain it had; that immediately thereafter and on the same day Ferguson, representing appellant, confirmed to appellee both by wire and by mail the sale of the grain fully in compliance with the terms of the agreement between the parties; that by the provisions of the language found in that portion of the confirmation previously herein copied, appellee accepted the terms of the agreement in full by reason of his silence and his failure to raise any question about any errors or inconsistencies therein contained. For the reasons stated appellant is bound by the acts of its agent, Ferguson, in the transaction had, just as appellee is bound by his own admissions, acts and conduct in the transactions. According to the record, both parties consented to all of the terms reflected in the confirmation sent by wire and letter to appellee by appellant's agent, Ferguson, and in our opinion such constituted a valid and binding contract between the parties, notwithstanding the fact that appellant, without then knowing its agent, Ferguson, had sent a confirmation to appellee, likewise sent by mail a partial confirmation of the agreement to appellee, which confirmation is partial because it did not contain in detail all of the matters agreed upon by the parties although its terms did not conflict in any manner with the terms of the agreement and the confirmation previously furnished by Ferguson. The later confirmation sent by appellant referred to the grain as "#2 Yellow Milo" while the confirmation furnished by Ferguson showed the grain to be "#2 yellow milo or better, 14% or less moisture." The Ferguson confirmation likewise referred to "two or more transits," which language is not found in the confirmation later sent by appellant to appellee. The Ferguson confirmation correctly revealed all of the terms of the agreement. However, there was no conflict between its material provisions and the material provisions of the confirmation sent later by appellant. In any event, the parol agreement had been consummated after appellee received the Ferguson confirmation which bound his principal, Producers Grain Corporation, and it was not competent for appellant to seek, if it did, to change the terms of the agreement in any manner. Ferguson v. Sanders, Tex.Civ.App., 133 S. W.2d 806. In our opinion there did not exist any material variance in the confirmations furnished appellee such as would or could invalidate the agreement between the parties.

According to the previously related uncontroverted facts and particularly because of the admissions made by appellee in his

testimony, we believe there was a meeting of the minds of the parties upon the terms of the agreement which resulted in a valid and binding contract between the parties and that the trial court committed reversible error when it concluded to the contrary as a matter of law. Vincent v. Global Corporation, Tex.Civ.App., 217 S.W.2d 66; Maudr v. Ansley, Tex.Civ.App., 109 S.W.2d 501; H. H. Watson Co. v. Alfalfa Growers' Exchange, Tex.Civ.App., 300 S.W. 199; Smith Grain Co. v. H. H. Watson Co., Tex. Civ.App., 285 S.W. 868; Watson v. Howe Grain & Mercantile Co., Tex.Civ.App., 214 S.W. 843.

■ In the event there existed a material variance between the confirmation sent by Ferguson and the later one sent to appellee by appellant, appellee accepted and acted upon the agreement and confirmations thereof without complaining, acquiesced in the terms thereof, sought and obtained an extension of the time for shipment of the grain according to the previously agreed terms, and finally, as well as belatedly, ordered the grain shipped according to the terms of the "Contract Number 632," which was the last confirmation sent to him by appellant, for which reasons we believe appellee ratified the contract and was therefore bound by its terms for that reason if no other. Vinson v. Horton, Tex.Civ.App., 207 S.W.2d 432; Ferguson v. Martin, Tex.Civ.App., 70 S.W.2d 804; Sugarland Industries v. Cuellar, Tex.Civ. App., 253 S.W. 660; Pittman & Harrison Co. v. B. F. Robey & Co., Tex.Civ.App., 234 S.W. 1114; Gottlieb v. Dismukes, Tex. Civ.App., 230 S.W. 792.

■ While it conclusively appears from the record that appellee breached the terms of the agreement made by the parties, we do not believe a proper measure of damages has been conclusively established, for which reason we cannot reverse and render the trial court's judgment in the matter. The trial court has in effect found that there was no evidence of market price at the place of delivery under the terms of the contract on the date of the breach, for which reason it concluded that there was no legal evidence to support damages under the terms of the agreement as shown by the Ferguson confirmation No. 63. The record reveals that the terms of the original agreement were extended through July, 1951, by mutual consent of the parties but according to the record no further extension was sought or granted. However, appellee thereafter sent shipping orders on November 19, 1951. Such was appellee's last act performed in connection with the transactions. His last such act, according to the record, was predicated upon the instrument (confirmation No. 632) the contents of which he is now challenging. The record reflects that Pharris testified that the reasonable cash market value on July 30, 1951, of the kind and character of grain here involved ranged from $2.47 to $2.50 delivered at Texas Common Points but the terms of the agreement were extended through July 31, 1951. Pharris also testified that the grain in question was sold on August 22, 1951, at $2.50 per cwt. TCP and that he made an effort to obtain the best price available. We have failed to find any evidence showing the market price of the grain at the place of delivery on July 31, 1951, the apparent date of the breach of the contract.

For the reasons stated, we do not believe the evidence concerning the measure of damages has been sufficiently developed for us to render judgment but for the reasons stated we do reverse the judgment of the trial court and remand the cause. Reversed and remanded.