**DEN NORSKE STATS OLJESELSKAP, A.S, Plaintiff and Counter–Defendant,**

v.

**HYDROCARBON PROCESSING, INC., Defendant and Counter–Claimant.**

Civil Action No. H–97–731.

United States District Court, S.D. Texas, Houston Division.

Jan. 23, 1998.

Leon V. Komkov, Austin, TX, for Plaintiff.

John Victor Mastriani, Houston, TX, for Defendant.

## Opinion on Summary Judgment

HUGHES, District Judge.

### 1. Introduction.

Two companies entered into contracts for the sale of propane. A broker arranged the contracts and confirmed them by telephone calls and facsimile transmissions to both companies. When the price of propane dropped, one of the companies repudiated the contracts. The other sued seeking damages. Because contracts were formed, confirmed, and breached, the damaged company will recover its loss.

### 2. Facts.

On September 24, 1996, Hydrocarbon Processing, Inc. (Hydro) agreed to sell Den norske stats oljeselskap, a.s. (Statoil), 10,000 barrels of propane at $0.4200 per gallon for delivery in February 1997. Gasteam USA, Inc., brokered the agreement, called both parties to confirm that the sale had closed, and confirmed the agreement by sending facsimiles to both parties.

On December 20, 1996, Statoil and Hydro agreed to trade February propane deliveries. Statoil agreed to sell Hydro 25,000 barrels of propane at $0.5725 per gallon; Hydro agreed to sell Statoil 25,000 barrels at a price to be calculated based on the average current month quotation in an independent report. Again, Gasteam brokered the transaction, called both parties to confirm that the sale had closed, and sent confirming faxes to them.

The faxes specified the seller, buyer, product, quality, quantity, delivery, price, payment, title, risk, distribution, confidentiality, and commission. They began by saying, "Further to recent conversations, we are pleased to confirm the following transaction . . . ." They did not require a response from the parties. Hydro never requested additional documents nor objected to the faxes. In none of seventy-two transactions brokered by Gasteam for Hydro and not involving Statoil in 1995-1996 did Hydro tell Gasteam that it required additional documents to close a deal.

In mid-February—sixty days after the second deal and, coincidentally, at the time for performance of both deals—Hydro sent letters to Statoil repudiating both contracts, contending that the faxes were mere offers. Propane had by then dropped to $0.38793 per gallon. Statoil covered the first contract. It made a profit of $6,300.00 on the first deal but lost $193,798.50 on the second. Statoil seeks its net loss of $187,498.50, Gasteam's brokerage fee of $1,050.00, attorneys' fees of $14,473.33, and pre- and post-judgment interest.

### 3. Contract Formation.

■ Texas law allows a contract to "be made in any manner sufficient to show agree-

ment." Tex. Bus. & Com. Code § 2.204(a) (1994). The confirming memoranda from the middle party reliably evinces agreement.

The only reasonable interpretation of the facts is that contracts were formed. Gasteam conveyed Statoil's offers to Hydro and Hydro's acceptance to Statoil. It then confirmed the transactions by telephone and fax. That is simple contract formation—offer and acceptance—occurring through a broker and documented in faxes.

In a similar situation, a contract between two grain dealers was formed through a broker who sent confirmation by wire and mail to the parties. The purchasing grain dealer made no complaints on receipt of the confirmation. *Producers Grain Corp. v. Rust,* 291 S.W.2d 477, 480 (Tex.Civ.App.—Amarillo 1956, no writ). *See also Louisiana Land & Exploration Co. v. Pilot Petroleum Corp.,* 900 F.2d 816, 817 n. 4 (5th Cir.1990) (noting, without comment, that parties had "contracted" for sale of jet fuel by buyer's contacting broker who transmitted confirmation telexes to seller). Under Texas law, therefore, Hydro and Statoil formed contracts. Hydro's argument that there is a genuine issue of material fact on propane industry standards for contract formation does not matter: a contract was formed under Texas law.

At a minimum, Hydro acquiesced to the contracts. Even if, as Hydro contends, the faxes were mere offers, Hydro's silence in the face of "confirming telefaxes" is acceptance.

> It is true that, generally speaking, an offeree has a right to make no reply to offers, and hence that his silence is not to be construed as an acceptance. But, where the relation between the parties is such that the offeror is justified in expecting a reply, or the offeree is under a duty to reply, the latter's silence will be regarded as acceptance. Under such circumstances, "one who keeps silent, knowing that his silence will be misinterpreted, should not be allowed to deny the natural interpretation of his conduct," etc. Williston on Contracts, §§ 91, 91a.

*Laredo Nat'l Bank v. Gordon,* 61 F.2d 906, 907 (5th Cir.1932). Hydro had to object openly and promptly if it did not intend to perform. Because it remained silent, Hydro at least acquiesced to the contract.

### 4. *Affirmative Defenses.*

Hydro has asserted the affirmative defenses of failure of consideration, estoppel, fraud, and contributory negligence. Two of these defenses are legally impossible: one cannot negligently commit fraud. None of the defenses is convincing: no fact shows lack of consideration, estoppel, fraud, or contributory negligence.

■ In its response to Statoil's motion for summary judgment, Hydro raises the statute of frauds as an affirmative defense, which it had not asserted in its original answer and which it did not seek leave to add until seven months after filing its original answer. The claim is, therefore, procedurally deficient. It is also substantively defective. Gasteam's confirming faxes satisfy the statute:

> [A] contract for the sale of goods for the price of $500 or more is not enforceable ... unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

Tex. Bus. & Com. Code § 2.201(a) (1994). Gasteam was the broker for both parties and acted with the authority of both parties. Statoil asked Gasteam to arrange the transactions. Gasteam arranged them with Hydro. Hydro conveyed its acceptance to Gasteam. Gasteam prepared, signed, and delivered the faxes to both parties. Each fax constitutes "a writing ... signed by ... [an] authorized agent or broker." Although Gasteam's president stated in his affidavit that Gasteam acted independently rather than as the agent for either of the parties, Gasteam was, nevertheless, *authorized* by both parties to broker the transactions. At the very least, Gasteam had the authority to convey information between the parties. Gasteam sent signed, confirming faxes to the parties. The statute of frauds requires nothing more.

■ Even if the statute of frauds was not already satisfied, the faxes would fall within its "merchant's exception":

Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of [this law] against such party unless written notice of objection to its contents is given within ten days after it is received.

Tex. Bus. & Com. Code § 2.201(b) (1994). Hydro and Statoil are merchants. The faxes are good against Statoil since Gasteam functioned as Statoil's broker. Tex. Bus. & Com. Code § 2.201(a) (1994). They were plainly letters of confirmation ("[W]e are pleased to confirm the following transaction . . . ."); because they did not require further action by either party to form the contracts, they were not mere offers. *See Adams v. Petrade Int'l, Inc.,* 754 S.W.2d 696, 706 (Tex.App.—Houston [1st Dist.] 1988, writ denied) (holding that a writing was a mere offer rather than a confirmation of an oral contract because recipient was required to sign and return copy of letter). Hydro received the faxes and knew their contents. It did not object. The faxes satisfy the statute of frauds under its requirements for merchants.

## 5. *Third-Party Complaint.*

■ Hydro has sought leave to file a third-party complaint against Gasteam, asserting that Gasteam is liable to Hydro for some of Statoil's damages. Hydro did not seek leave until over two months after Statoil moved for summary judgment. Hydro knew of the brokerage arrangement when it received the faxes from Gasteam. It certainly knew that Statoil's claims involved Gasteam no later than Statoil's complaint. At the absolute latest, Hydro knew the facts that would give rise to a third-party complaint against Gasteam when Statoil moved for summary judgment. Hydro has had ample opportunity to assert the claim against Gasteam. Its motion for leave will be denied. Even if Hydro were allowed to complain against Gasteam, it would not be able to recover. There are no facts indicating that Gasteam did anything wrong—no facts in the complaint, answer, motion for summary judgment, response to the motion for summary judgment, proposed first amended original answer, proposed third-party complaint, or any other pleading. The attack on Gasteam is a transparent attempt to foul the proceedings.

## 6. *Conclusion.*

The parties formed a contract; Hydro breached it. Statoil will recover its loss.