# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

No. 98-20190
Summary Calendar

DEN NORSKE STATS OLJESELSKAP,

Plaintiff-Counter Defendant-Appellee,

versus

HYDROCARBON PROCESSING, INC.,

Defendant-Counter Claimant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas
(H-97-CV-731)

October 6, 1998

Before POLITZ, Chief Judge, EMILIO M. GARZA and DeMOSS, Circuit Judges.

POLITZ, Chief Judge:[*]

Hydrocarbon Processing, Inc. ("HP") appeals an adverse summary judgment.

For the reasons assigned we affirm.

## BACKGROUND

In September 1996 Den Norske Stats Oljeselskap, A.S. ("Statoil") and HP

entered into a contract in which HP agreed to sell to Statoil 10,000 barrels of

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

propane at $0.4200 per gallon for delivery in February 1997. Gasteam USA, Inc. brokered the agreement, called both parties to confirm that the sale had closed, and confirmed the agreement by sending them telefaxes.

On December 20, 1996 HP and Statoil contracted again, this time to "swap" February propane deliveries. Statoil agreed to sell to HP 25,000 barrels of propane for February delivery for the fixed sum of $0.5725 per gallon; HP contemporaneously agreed to sell to Statoil 25,000 barrels of propane for February delivery at a price to be calculated based on the average current month quotation for Mont Belvieu non-TET propane in February, 1997 in OPIS (Oil Price Information Service LPG report). This contract was a "hedging" contract, used for purposes of managing adverse price risks of the parties.[1] As before, this contract was brokered by Gasteam; as before, the contract was confirmed by telefaxes sent to both parties.

By mid-February 1997, the time of performance for both contracts, the market had dropped, and the price of propane had fallen to $0.38793 per gallon. At this time, HP sent letters to Statoil in which it repudiated the two contracts, contending that the confirming telefaxes sent by Gasteam were mere offers. Statoil subsequently covered the first contract; it made $6,300 on its first deal with HP but lost $193,798.50 on the second. Statoil sued for its net loss of $187,498.50.

After a pretrial conference the district court suggested that Statoil move for

---

[1]Had the average current month quotation for February deliveries fallen below $0.5725, HP would have received the difference. Had the average fallen below that figure, Statoil would have profited from the difference between the fixed price and the calculated monthly price.

summary judgment. Statoil did so and HP responded, asserting that the Texas statute of frauds precluded a summary judgment.[2] The district court granted the summary judgment, awarding Statoil $213,392 in damages, attorney fees, and interest. HP timely appealed.

**ANALYSIS**

We review the grant of summary judgment *de novo*.[3] Without weighing the evidence, assessing its probative value, or resolving factual disputes, we search the record for resolution determinative facts, and if no material disputes are found, we apply controlling law to the controversy.[4] Summary judgment is appropriate if the nonmoving party rests merely upon conclusionary allegations, improbable inferences, and unsupported speculation.[5]

HP's principal contention is that the district court erred in finding that an enforceable contract had been formed under Texas law. More specifically, HP contends that there was not adequate proof to establish an oral contract between the parties, and that the confirming telefaxes did not satisfy the statute of frauds.[6] HP asserts that the telefaxes were mere offers which were never properly accepted. The district court, however, found that "[t]he only reasonable interpretation of the

---

[2]Tex. Bus. & Com. Code § 2.201 (1994).

[3]**City of Arlington v. FDIC**, 963 F.2d 79 (5th Cir. 1992).

[4]**Id.**

[5]**Krim v. BancTexas Group, Inc.**, 989 F.2d 1435 (5th Cir. 1993).

[6]Tex. Bus. & Com. Code § 2-201(a) (1994).

3

facts is that contracts were formed." We agree. Under Texas law, a contract may be made "in any manner sufficient to show agreement."[7] Here the parties agreed upon the necessary elements of the contract – namely amount, price, time and place of performance – and the agreements were confirmed both by telephone and fax. Texas law recognizes contracts formed in this manner.[8]

As to the statute of frauds defense, the district court correctly found that the claim procedurally was defective because HP did not seek leave to add the defense until seven months after the original filing. More importantly, as the district court found, even a timely statute of frauds defense claim would fail as the confirming telefaxes met the requirement of "a writing . . . signed by . . . [an] authorized agent or broker."[9] Finally, the "merchant's exception" to the statute of frauds is applicable as all the parties involved in the formation of the contract – both HP and Statoil, as well as Gasteam – are "merchants" for purposes of the Texas statute of frauds.[10] Under the statute, the contract was confirmed because HP failed to object

---

[7]Tex. Bus. & Com. Code § 2-204 (1994).

[8]**Producers Grain Corp. v. Rust**, 291 S.W.2d 477 (Tex. Civ. App. -- Amarillo 1956, no writ); *see also* **Louisiana Land & Exploration Co. v. Pilot Petroleum Corp.**, 900 F.2d 816 (5th Cir. 1990).

[9]Tex. Bus. & Com. Code § 2.201(a) (1994). The district court correctly found that although Gasteam's president stated that Gasteam acted independently rather than as an agent for either of the parties, Gasteam was authorized by the parties to act as broker to the transactions.

[10]The "merchant's exception" is found in Tex. Bus. & Com. Code  (B) (1994):
> Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of Subsection (a) against such party unless written notice of objection to its contents is givin within ten days after it is received.

to the confirmation within 10 days.[11]

Nor can HP claim that the contract is not binding because the swap contract was not confirmed by a separate document according to industry standards, or because the broker Gasteam did not have authority to act for both parties. In the years preceding the contracts with Statoil, HP had relied on Gasteam's brokering for 72 prior propane contracts, and HP had never required any additional written document from Gasteam. Although industry standards may be used in determining the agreement between the parties, the confirming telefaxes and HP's prior dealings with Gasteam are evidence of the express agreement between the parties. HP cannot now claim that the brokering methods were insufficient to form binding contracts because of an industry standard upon which HP itself has never relied.

Nor are we persuaded by HP's other contentions, to wit: 1) that Statoil failed to lay a proper foundation for expert testimony; 2) that the affiants lacked personal knowledge of the facts sworn; 3) that HP effectively rejected the confirmation within ten days of receipt; 4) that Gasteam lacked authority to bind HP and thus the contracts were not formed; 5) that Gasteam is liable for its ultra vires acts; 6) that the district court erred in denying HP's motion for continuance; 7) that the court erred in ignoring controverting affidavits, and 8) that the court erred in not considering HP's affirmative defenses. Our review of the record, in light of controlling law, persuades that these contentions are without merit.

The judgment appealed is AFFIRMED.

---

[11]Tex. Bus. & Com. Code § 2.201(b) (1994).